AUCTION COMPANY OF
AMERICA, Appellant,

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Manager of the FSLIC
Resolution Trust Fund, Appellee.

No. 96–5343.

United States Court of Appeals,
District of Columbia Circuit.

April 28, 1998.

Before: WALD, WILLIAMS and ROGERS, Circuit Judges.

### ON PETITION FOR REHEARING

### ORDER

PER CURIAM:

Upon consideration of the petition for rehearing of the Federal Deposit Insurance Corporation ("FDIC") and of the response to the foregoing, it is

ORDERED, by the Court, that the petition is denied, for the reasons set forth in the opinion of the Court filed herein this date.

### OPINION

WILLIAMS, Circuit Judge:

Appellee FDIC petitions for rehearing of the decision in *Auction Co. v. FDIC,* 132 F.3d 746 (D.C.Cir.1997) ("*Auction Co. I*"). The FDIC objects that the panel has (1) wrongly asserted that a contract with the FDIC as Receiver will support Tucker Act jurisdiction, and (2) wrongly identified the source of judicial jurisdiction over Auction Company's suit. We deny the petition for the following reasons.

\* \* \*

■ *Auction Co. I* held that the FDIC counted as "the United States" for the purposes of the catch-all federal statute of limitations for any "civil action commenced against the United States," 28 U.S.C. § 2401(a). See 132 F.3d at 750. The panel opinion reasoned that since § 2401(a) had originated as part of the Tucker Act, the scope of "United States" in § 2401(a) should be the same as its scope in the Tucker Act. *Id.* at 749–50. That Act provides jurisdiction for suits against the United States whenever "a federal instrumentality acts within its stat-utory authority to carry out [the government's] purposes" as long as no other specific statutory provision bars jurisdiction. *Butz Engineering Corp. v. United States,* 204 Ct. Cl. 561, 499 F.2d 619, 622 (Ct.Cl.1974); see also *L'Enfant Plaza Properties, Inc. v. United States,* 229 Ct.Cl. 278, 668 F.2d 1211, 1212 (Ct.Cl.1982).

■ That the FDIC as Receiver "counts as the United States for the Tucker Act," as we held in *Auction Co. I,* 132 F.3d at 750, does not, standing alone, establish Tucker Act jurisdiction over the FDIC as Receiver. As we just observed, such jurisdiction depends also on there being no specific statutory bar to Tucker Act jurisdiction, a limitation that does not affect the § 2401(a) analysis. Since the possible existence of a specific bar to Tucker Act jurisdiction is not relevant to the conclusion that the FDIC as Receiver counts as the United States, that section of the panel opinion should not be taken to suggest that no specific statutory bar exists. The FDIC points to 12 U.S.C. § 1821(d)(13)(D) as such a bar; nothing in the panel opinion should be taken to say that that section never operates to preclude jurisdiction. We spell out below the extent to which it does, so far as is necessary to identify the source of jurisdiction in this case.

\* \* \*

As we noted in *Auction Co. I,* the FDIC argued that the district court had jurisdiction over this action pursuant to § 1821(d)(6), which allows suit in district court following administrative review of claims against depositories. The panel rejected that suggestion and agreed with Auction Company's theory of jurisdiction, which looked to the FDIC's sue-or-be-sued clause for a waiver of immunity and found subject matter jurisdiction based on the Financial Institutions Reform, Recovery and Enforcement Act of 1989's ("FIRREA") "deemer" clause, 12 U.S.C. § 1819(b)(2)(a). See 132 F.3d at 751.

■ The FDIC's petition for rehearing reiterates its theory of jurisdiction, arguing that Auction Company's account cannot be correct because the jurisdiction-precluding effect of § 1821(d)(13)(D) extends to this

case, allowing only such jurisdiction as is granted in § 1821(d)(6).[1] Although we will not attempt to define fully the concept of "claims" as it appears in subsections (d)(13)(D) and (d)(6) of 12 U.S.C. § 1821, we will make clear the grounds for our rejection of the FDIC's view of those sections as they apply to this case.

Section 1821(d)(13)(D) states in relevant part:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over
>
> > (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> >
> > (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

The only clause of the subsection that "otherwise provide[s]" jurisdiction is 12 U.S.C. § 1821(d)(6), which provides for administrative determination of "any claim against a depository institution for which the Corporation is receiver" and thereafter for adjudication in district court. These two subsections would seem to set up a standard exhaustion requirement: (d)(6)(A) routes claims through an administrative review process, and (d)(13)(D) withholds judicial review unless and until claims are so routed. Their wording, however, creates a difficult interpretative problem: the jurisdiction-precluding language of (d)(13)(D) can accommodate quite a broad reading—broad enough to cover contracts between private parties and the FDIC

as Receiver for a failed depository institution. But (d)(6)(A) is quite narrow—it allows judicial review, after administrative determination, of "any claim against a depository institution for which the Corporation is receiver." Thus, for claims that are not "against a depository institution" but that do fall within (d)(13)(D), the effect of the two sections, on a plain language approach, would be not to impose an administrative exhaustion requirement but to foreclose judicial jurisdiction altogether, a result troubling from a constitutional perspective and certainly not the goal of FIRREA. See generally, e.g., *Hudson United Bank v. Chase Manhattan Bank of Connecticut*, 43 F.3d 843, 848–49 (3d Cir. 1994) ("Congress did not intend FIRREA's claims process to immunize the receiver, but rather wanted to require exhaustion of the receivership claims process before going to court."); *Homeland Stores, Inc. v. RTC*, 17 F.3d 1269, 1273–74 (10th Cir.1994) (assuming that "Congress intended those 'claims' barred by § 1821(d)(13)(D) to parallel those contemplated under FIRREA's administrative claims process"). A claim based on a contract with the FDIC as Receiver for a particular depository is one of the types of actions that fall into the gap. Such a contract might be either (1) one entered into in the first instance by the FDIC as Receiver, or (2) one inherited from a depository institution and accepted by the receiver, rather than being rejected pursuant to § 1821(e)(1) and (2). Such claims, particularly of the first sort, do not appear to be claims "against a depository institution" but they would, superficially, be ones "relating to any act or omission of ... the Corporation as receiver." How should a court resolve the problem? The obvious solution is to read (d)(6)(A) and (d)(13)(D) to apply to the same "claims."[2]

---

**1.** The FDIC suggests also that our analysis of the jurisdictional issue was unnecessary. This underestimates the imperatives of limited federal jurisdiction. Federal courts have an independent obligation to assure themselves of jurisdiction, even when the parties fail to challenge it. See, e.g., *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990); *Floyd v. District of Columbia*, 129 F.3d 152, 155 (D.C.Cir.1997). Establishing the existence of federal jurisdiction may be easy, but it is never unnecessary and never dictum. See *American Nat'l Red Cross v. S.G. & A.E.*, 505 U.S. 247,

255 n. 5, 112 S.Ct. 2465, 2470 n. 5, 120 L.Ed.2d 201 (1992). Here the parties offer mutually incompatible theories of jurisdiction, which would warrant a look from us if warrant were needed.

**2.** Even such a harmonious reading would not necessarily limit the net effect of (d)(6)(A) and (d)(13)(D) to the imposition of an exhaustion requirement on a specific class of suits against the FDIC. For example, it may well be that Congress intended entirely to prevent parties from maintaining declaratory judgment actions against the receiver, see *Nat'l Union Fire Insur-*

We have called this a "plausible" method of reconciliation, *Nat'l Trust for Historic Preservation v. FDIC*, 995 F.2d 238, 240 (D.C.Cir. 1993), vacated 5 F.3d 567, reinstated in relevant part 21 F.3d 469 (D.C.Cir.1994), and other courts agree. See, e.g., *Rosa v. RTC*, 938 F.2d 383, 394 (3d Cir.1991) (stating that (d)(13)(D) bar applies only to claims "susceptible of resolution through the claims procedure"); see also *Henderson v. Bank of New England*, 986 F.2d 319, 321 (9th Cir.1993) (same, quoting *Rosa*).

There are two possible ways to produce such a harmonious reading of "claims". One may either read (d)(6)(A) broadly, ignoring the phrase "against a depository institution," or read (d)(13)(D) narrowly, implying the phrase "against a depository institution" on the basis of the statute's general focus on such claims. See *Office and Professional Employees International Union v. FDIC*, 962 F.2d 63, 68 (D.C.Cir.1992) ("*OPEIU*"). The circuits have split on which approach to take. Compare *Stamm v. Paul*, 121 F.3d 635 (11th Cir.1997) (applying § 1821(d)(6) to claim against receiver); *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760 (5th Cir. 1996) (same); *Hudson*, 43 F.3d at 848–49 (same) with *Homeland*, 17 F.3d at 1275 (holding administrative review process inapplicable to claims accruing after RTC's appointment as receiver).

Our circuit has not taken a position on the issue, although we have indicated that bankruptcy law is a useful aid in understanding FIRREA. See *OPEIU*, 962 F.2d at 68. A bankruptcy-modeled approach would draw a distinction between claims against the depository, which accrue before the appointment of the receiver and are subject to administrative determination,[3] and claims against the receiver, which accrue after appointment and are not. See, e.g., *Matter of M. Frenville Co., Inc.*, 744 F.2d 332, 335 (3d Cir.1984) (noting that post-petition claims are not subject to

automatic stay); 11 U.S.C. 361(1). But this case does not require us to decide how far the bankruptcy distinction should guide us in interpreting FIRREA. Section 1821(d)(13)(D) cannot apply to Auction Company's suit regardless of how broadly "claim" is read.

Section 1821(d)(13)(D)(ii), as discussed, bars jurisdiction (except as otherwise provided in subsection (d)) over "any claim relating to any act or omission of such institution or the Corporation as receiver." Whatever may be the scope of "claim," we think it is clear that the reference to "the Corporation as receiver" in (d)(13)(D)(ii) means the Corporation as receiver *for such institution* (i.e., a particular institution of the sort referred to in (d)(13)(D)(i)). Omitting this restriction would change § 1821(d)(13)(D) from an exhaustion requirement to a grant of immunity for all claims arising from acts the FDIC takes "as receiver"—except to the extent that those claims could be handled by an administrative process open only to claims "against a depository institution." We are confident that Congress did not intend such a result, which would raise serious constitutional questions. See, e.g., *Nat'l Union Fire Ins. Co. v. City Savings*, 28 F.3d 376, 390 n. 16 (3d Cir.1994).

In this case, however, the FDIC did not act as receiver for any particular depository. The contract it entered into related to the assets of an unspecified number of unnamed depositories and provided that the assets could be unilaterally withdrawn at any time up to 48 hours before the auction. We refuse to conceive of this arrangement as a contract between Auction Company and the FDIC as Receiver for a quantum flux of probabilistic depositories whose identities are revealed only by the filing of a lawsuit. A federal receivership is not Schroedinger's cat. If the FDIC enters into a transaction whose economic realities are impossible to square with

---

*ance Co. v. City Savings*, 28 F.3d 376, 385–86 (3d Cir.1994); cf. *Nat'l Trust for Historic Preservation v. FDIC*, 21 F.3d 469, 471–73 (D.C.Cir.1994) (Wald, J., concurring) (discussing operation of anti-injunction provision of § 1821(j), and noting existence of claims procedure as alternative to injunctive relief).

3. Claims based on contracts rejected by the receiver pursuant to § 1821(e)(1) and (2) would fall into this category. Cf. 11 U.S.C. §§ 365(g), 502(g) (providing that rejection of an executory contract by bankruptcy trustee is treated as breach occurring immediately before filing of bankruptcy petition).

the notion that the FDIC is acting as receiver for a particular depository, liability for its acts will run to the FDIC directly, unmediated by exhaustion requirements governing claims against depositories. If the FDIC acts as a generic receiver, it must expect to be sued as such.

\*　　\*　　\*

With this clarification, the petition for rehearing is hereby denied.

*So ordered.*