132 F.3d 746
 328 U.S.App.D.C. 45
 AUCTION COMPANY OF AMERICA, Appellant,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the
FSLIC Resolution Trust Fund, Appellee.
 No. 96-5343.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 21, 1997.
Decided Dec. 19, 1997.
Rehearing Denied April 28, 1998.
 
 Appeal from the United States District Court for the District of Columbia (No. 94cv02006).
 Alan M. Grayson, McLean, VA, argued the cause and filed the briefs for appellant.
 J. Scott Watson, Counsel, Federal Deposit Insurance Corporation, argued the cause for appellee. With him on the brief were Ann S. DuRoss, Assistant General Counsel, Federal Deposit Insurance Corporation, Robert D. McGillicuddy, Senior Counsel, Roberta H. Clark, Counsel, Federal Deposit Insurance Corporation, and Robert P. Fletcher, Washington, DC.
 Before: WALD, WILLIAMS and ROGERS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.
 STEPHEN F. WILLIAMS, Circuit Judge:
 
 
 1
 Auction Company of America ("Auction Company") seeks damages for breach of contract from the Federal Deposit Insurance Company ("FDIC") as statutory successor to the Resolution Trust Corporation ("RTC"). It filed the first of three suits (and the one both parties regard as controlling for limitations purposes) four years and one day after the cause of action accrued. The filing was too late under the District of Columbia's three-year limitations period for contract actions, 12 D.C.Code § 301(7), but timely under either the general six-year limitations period for civil actions against the United States, 28 U.S.C. § 2401(a), or the Missouri five-year contract limitations period, Mo. Ann. Stat. § 516.120(1). The district court ruled that the federal statute did not govern and performed a choice-of-law analysis to arrive at the D.C. limitations period. It thus dismissed the complaint. Because we find that the federal statute does apply, we reverse and remand without reaching the state choice-of-law issue.
 
 
 2
 * * *
 
 
 3
 Auction Company's claim is that it entered into a contract with the RTC, as receiver for certain failed thrifts, to auction off key thrift assets. On September 18, 1990, after a number of actions that according to Auction Company impeded its efforts to organize the auction, the RTC terminated the contract and thereby breached it. Four years and one day later, on September 19, 1994, Auction Company filed its first complaint.
 
 
 4
 That complaint's caption named the RTC as defendant, but also said that the suit was against the RTC in its corporate capacity ("RTC-Corporate"). The RTC responded with a motion to dismiss, arguing that it was a legal entity distinct from the RTC as Receiver and could not be sued for contractual liabilities of the RTC as Receiver. In briefing the motion it also asserted that the statutory provisions for administrative determination of claims against depository institutions, see 12 U.S.C. § 1821(d)(3)-(13), imposed an exhaustion requirement on Auction Company's contract claim. On June 15, 1995, Auction Company submitted its claim for administrative determination by the RTC as Receiver, but at the same time protested that its contract action ran against the RTC, not against a depository institution, and was therefore not subject to the administrative claim allowance procedures.
 
 
 5
 12 U.S.C. § 1821(d)(5) requires the RTC as Receiver to allow or disallow claims within 180 days. Without waiting for the end of this period, Auction Company filed a second suit on October 4, 1995. This complaint named the RTC as Receiver as defendant but was in other respects identical to the first. The RTC as Receiver moved to dismiss on the grounds that Auction Company had not exhausted its administrative remedies. On February 9, 1996, following the disallowance of its claim by RTC as Receiver, Auction Company filed its third suit. By this time the RTC no longer existed; its authorizing statute provided for termination on December 31, 1995. See 12 U.S.C. § 1441a(m)(1). The FDIC, its statutory successor, was named as defendant in the third suit and was substituted into the first two. We do not believe this substitution affects our analysis, and we will limit our focus to the FDIC.
 
 
 6
 All three actions were consolidated before the district court. The FDIC moved for judgment on the pleadings under Rule 12(c), seeking dismissal on the grounds that the District of Columbia three-year statute of limitations for contracts applied. Auction Company suggested instead the six-year limitations period for civil actions against the United States. See 28 U.S.C. § 2401(a). Alternatively, it noted that the contract at issue contained a choice-of-law clause selecting Missouri law, and argued that the Missouri statute of limitations should govern. The district court, treating the 12(c) motion as "essentially" one to dismiss under 12(b)(6), ruled that the FDIC was not "the United States" for the purposes of 28 U.S.C. § 2401(a). It thus proceeded to pick between the D.C. and the Missouri statutes of limitation. Reviewing de novo, we find error in the first determination and stop at that juncture: Section 2401(a) does apply, and Auction Company's suits were timely.
 
 
 7
 * * *
 
 
 8
 28 U.S.C § 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The question for this appeal, broadly stated, is whether the FDIC counts as the United States for the purposes of this provision. The district court was impressed by O'Melveny & Myers v. FDIC, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), which contains the striking phrase "the FDIC is not the United States," id. at 85, 114 S.Ct. at 2053-54. But as the O'Melveny Court was not interpreting 28 U.S.C. § 2401(a), or indeed any other federal statute, this language cannot be controlling. Whether the FDIC should be treated as the United States depends on the context. See FDIC v. Hartford Ins. Co. of Ill., 877 F.2d 590, 592-93 (7th Cir.1989).
 
 
 9
 In O'Melveny the FDIC as Receiver sued the counsel of a failed savings and loan for malpractice and breach of fiduciary duty in failing to expose frauds in the management of the S&L. The lawyers defended on the grounds that the management was fully aware of its own frauds, and that knowledge of those frauds must therefore be imputed to the S&L, and thence to the FDIC as Receiver. The argument was a possible winner for the lawyers under California's imputation law, but the FDIC argued that state law should be displaced by federal common law. Immediately after the Court's declaration that the FDIC was not the United States, it twice discounted the significance of the remark, noting that: (1) even if the FDIC were the United States it would be begging the question to assume that it was asserting its own rights rather than those of the S&L; and (2) even if federal law governed in the sense explained in United States v. Kimbell Foods, Inc., 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979), i.e., a sense that includes federal adoption of state law rules, that would "not much advance the ball." The Court decided that state law should apply: "[T]his is not one of those extraordinary cases in which the judicial creation of a federal rule of decision is warranted." O'Melveny, 512 U.S. at 89, 114 S.Ct. at 2056.
 
 
 10
 Creating federal common law is one thing, applying a federal statute quite another. State law will generally fill the gaps in a comprehensive federal statutory scheme such as the FDIC's enabling legislation, but it will not do so to the exclusion of another applicable federal statute. See id. at 85, 114 S.Ct. at 2053-54. If § 2401(a) applies, it does so by its own terms, so long as not contradicted by some other federal statute, not by virtue of any lawmaking power of federal courts. On the question of the scope of "United States" in § 2401(a), O'Melveny provides no guidance.
 
 
 11
 So we turn to the statute itself. Section 2401(a) originated as the internal limitations period for the Little Tucker Act. See Christensen v. United States, 755 F.2d 705, 707 (9th Cir.1985); Saffron v. Dep't of the Navy, 561 F.2d 938, 944-45 (D.C.Cir.1977). That act and its big brother the Tucker Act collectively establish jurisdiction and a waiver of sovereign immunity for certain cases that are "against the United States" and founded upon various bases including "any express or implied contract with the United States." For contract cases, the Little Tucker Act gives the district courts jurisdiction, concurrent with the Court of Federal Claims, if the amount sought is less than $10,000. If more than $10,000 is at issue, the suits lie only in the Court of Federal Claims under the Tucker Act proper. See 28 U.S.C. § 1346(a)(2); 28 U.S.C. § 1491; see also Saffron, 561 F.2d at 944. In the 1946 U.S.Code, the Little Tucker Act was located at 28 U.S.C. § 41(20), which provided in part, "No suit against the Government of the United States shall be allowed under this paragraph unless the same shall have been brought within six years after the right accrued for which the claim is made." The Act of June 25, 1948 made minor changes in the wording and relocated this language to 28 U.S.C. § 2401(a), where it was to function as a catch-all limit for non-tort actions against the United States.
 
 
 12
 While this shuffle expanded the function of § 2401(a), see, e.g., Daingerfield Island Protective Society v. Babbitt, 40 F.3d 442, 445 (D.C.Cir.1994) (applying § 2401(a) to APA suit); Impro Products v. Block, 722 F.2d 845, 850 n. 8 (D.C.Cir.1983) (same), the section remained applicable as ever to Little Tucker Act suits. See, e.g., Loudner v. United States, 108 F.3d 896, 900 (8th Cir.1997). Thus, barring some exceptional statutory twist, the term "United States" must have the same meaning in § 2401(a) as in the Little Tucker Act. And hence if the FDIC as Receiver is the United States for the Little Tucker Act, it must be also for § 2401(a).
 
 
 13
 Does the Little Tucker Act treat the FDIC as Receiver as the United States? Jurisdiction over contract claims, under either Tucker Act, exists only for contracts "with the United States." If a contract with the FDIC as Receiver supports jurisdiction under either Tucker Act, then it counts as a contract with the United States, and the FDIC as Receiver must be "the United States" for the Tucker Acts. So the key question turns out to be whether a contract with the FDIC as Receiver will allow a Tucker Act suit. If that is so, then the equivalent meaning of "United States" in the Little Tucker Act and its statute of limitations allows us to conclude that the FDIC as Receiver is the United States for the purposes of § 2401(a).
 
 
 14
 The answer to the question is yes; the Act may be invoked whenever "a federal instrumentality acts within its statutory authority to carry out [the government's] purposes" as long as no other specific statutory provision bars jurisdiction. Butz Engineering Corp. v. United States, 204 Ct.Cl. 561, 499 F.2d 619, 622 (Ct.Cl.1974); see also L'Enfant Plaza Properties, Inc. v. United States, 229 Ct.Cl. 278, 668 F.2d 1211, 1212 (Ct.Cl.1982). The FDIC concedes that the FDIC as Receiver is a federal instrumentality; indeed, eager to argue that it is not an agency, it pushes instrumentality status aggressively. See FDIC Br. at 9-10. Doctrinally, the fit is relatively easy, and in fact contracts with the FDIC (and the RTC) have occasioned suits under the Tucker Act.[1] See, e.g., Slattery v. United States, 35 Fed. Cl. 180 (1996) (FDIC contract); Suess v. United States, 33 Fed. Cl. 89 (1995) (Office of Thrift Supervision and RTC contracts). The FDIC has even argued, with some initial success, that because it is the United States, it can only be sued under the Tucker Act and hence in the Court of Federal Claims. See, e.g., FDIC v. Hulsey, 22 F.3d 1472, 1480 (10th Cir.1994) (rejecting argument); Farha v. FDIC 963 F.2d 283, 288 (10th Cir.1992) (accepting argument).
 
 
 15
 As the FDIC as Receiver counts as the United States for the Tucker Act, it does so for the Tucker Act (and general federal) statute of limitations. The FDIC appears to take refuge in the idea that the captioning of the lawsuit somehow outweighs the functional identity of the United States and its instrumentalities for the purposes of § 2401(a). But that argument has been overwhelmingly rejected, by this circuit and others, in the specific context of the application of § 2401(a). See, e.g., Mason v. Judges of the U.S. Court of Appeals for D.C., 952 F.2d 423, 425 (D.C.Cir.1991) ("[A] civil action against a federal official based on that person's official actions is 'a civil action commenced against the United States' under § 2401(a)."); Blassingame v. Secretary of the Navy, 811 F.2d 65, 70 (2d Cir.1987) (discarding "fiction that an action alleging unlawful conduct by a federal official ... and an agency, is not an action against the United States"); Geyen v. Marsh, 775 F.2d 1303, 1307 (5th Cir.1985) (same); Oppenheim v. Campbell, 571 F.2d 660 (D.C.Cir.1978) (Civil Service Commission is United States for § 2401(a)); see also Hartford Insurance, 877 F.2d at 592 (in finding statute assigning venue for certain cases against the FDIC as receiver of national banking associations applicable even though claimant captioned case as against the United States, asks rhetorically, "What is 'the Federal Deposit Insurance Commission as receiver' other than part of the United States?"); Portsmouth Redevelopment and Housing Auth. v. Pierce, 706 F.2d 471, 473 (4th Cir.1983) (discussing conditions under which action against federal agency is against United States). In the context of the Administrative Procedure Act, to which § 2401(a) applies, see Sierra Club v. Slater, 120 F.3d 623, 631 (6th Cir.1997); Daingerfield, 40 F.3d at 445, the statute's words reject the FDIC's approach: in authorizing suits for judicial review, it lumps together suits "against the United States, the agency by its official title, or the appropriate officer." 5 U.S.C. § 703.
 
 
 16
 * * *
 
 
 17
 This is not a Tucker Act suit, however, nor one under the APA. The FDIC could have argued, though it did not, that what distinguishes a suit against an agency from a suit against the United States is not the captioning of the complaint but the operative waiver of immunity. Section 2401(a), of course, is not limited to suits brought under the Tucker Act or the APA, but the FDIC could have argued that waiver under a sue-or-be-sued clause is different. Such a clause, the argument would go, lifts the immunity of only the agency, not the United States (assuming that that makes sense), and a suit in district court based on such a clause is accordingly not against the United States, even if the Tucker Act provides alternative Court of Federal Claims jurisdiction. The parties disagree about the source of district court jurisdiction here, and one likely reason the FDIC did not make this argument is that its brief locates the basis for jurisdiction in the district court's ability to review administrative disallowances of claims against depositories.[2]
 
 
 18
 The FDIC's theory of jurisdiction, however, is wrong. As we observed earlier, supra n. 1, Auction Company is not suing to enforce a contract with a defunct depository but to enforce one made initially and exclusively with the RTC. Accordingly, we examine this alternative argument on the basis of Auction Company's jurisdictional theory. Auction Company finds a waiver of sovereign immunity in FDIC's enabling legislation, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which empowers it to sue and be sued "in any court of law or equity, State or Federal." 12 U.S.C. § 1819(a) Fourth; see also United States v. Nordic Village, Inc., 503 U.S. 30, 34, 112 S.Ct. 1011, 1014-15, 117 L.Ed.2d 181 (1992) (such clauses are broad waivers of immunity). And Auction Company finds subject matter jurisdiction in FIRREA's "deemer" clause, 12 U.S.C. § 1819(b)(2)(A), which provides (with an exception not relevant here) that all actions to which the FDIC is a party "shall be deemed to arise under the laws of the United States." District courts can thus hear these actions as part of the "arising under" jurisdiction granted by 28 U.S.C. § 1331. See Osborn v. Bank of the United States, 22 U.S. (9 Wheat) 738, 6 L.Ed. 204 (1824); Williams v. Federal Land Bank of Jackson, 954 F.2d 774, 776 (D.C.Cir.1992).
 
 
 19
 The FDIC's argument, given these propositions, would be that when an agency is sued in its own name pursuant to a sue-or-be-sued clause, recovery is limited to funds within the agency's control, and the suit is not against the United States. A suit is against the United States, the argument goes, only if recovery would come from general Treasury funds. This position finds some support in the case law, beginning with suits against the Department of Housing and Urban Development but now reaching the FDIC and other agencies. See, e.g., Licata v. United States Postal Service, 33 F.3d 259, 262 (3d Cir.1994) (claim against Postal Service in its own name is not a claim against the United States); Far West Federal Bank v. Director, Office of Thrift Supervision, 930 F.2d 883, 890 (Fed.Cir.1991) (same with respect to FDIC); Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 55 (2d Cir.1985)(same with respect to HUD); Industrial Indemnity, Inc. v. Landrieu, 615 F.2d 644, 646 (5th Cir.1980) (same with respect to HUD). Cf., e.g., Portsmouth, 706 F.2d at 473 (suit against HUD is against United States because HUD monies are originally Treasury funds); Marcus Garvey Square, Inc. v. Winston Burnett Construction Co., 595 F.2d 1126, 1131 (9th Cir.1979) (same because no separate funds identified).
 
 
 20
 If we followed the analysis of these decisions, the FDIC could make the argument that this suit seeks funds under FDIC control and hence is not against the United States, pointing perhaps to 12 U.S.C. § 1821a(d), which limits some judgments to the assets of the FSLIC Resolution Fund. See Far West, 930 F.2d at 889-90 (finding funds within FDIC's control and rejecting Government argument of exclusive Claims Court jurisdiction). But making the argument would not even be necessary. Simply accepting the terms of the debate--the notion that suits against the United States and suits that may only generate judgments against specific agency funds are mutually exclusive categories--would spell victory for the FDIC. If the suit were against the United States (and not the FDIC), sovereign immunity would bar the district court from hearing it because the sue-or-be-sued clause does not waive the immunity of the United States and no other waiver allows district court jurisdiction; recast as a Tucker Act suit, this case would have to be brought in the Court of Federal Claims because it demands more than $10,000. If the suit were against the FDIC (and not the United States), § 2401(a) could not apply. Compare Portsmouth, 706 F.2d at 473 (finding exclusive Claims Court jurisdiction where suit is against U.S.) with Ammcon, Inc. v. Kemp, 826 F.Supp. 639, 643-44 (E.D.N.Y.1993) (finding § 2401(a) inapplicable where suit is against HUD). Because we believe this reasoning is fundamentally confused, we avoid it entirely and accept neither horn of the dilemma.
 
 
 21
 A demonstration of the confusion requires a brief trip into the origins of the distinction between suits against the United States and those against an agency. In Federal Housing Administration, Region No. 4 v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), the Supreme Court noted that the statute authorizing suit against the Federal Housing Administration specified that claims could be paid only from funds made available to the agency under that very statute. Id. at 250, 60 S.Ct. at 492-93. This of course did no more than state the unexceptionable principle that Congress, in waiving sovereign immunity for an agency, may limit the terms of the waiver.
 
 
 22
 As later cases picked up Burr, however, the doctrine changed shape. Marcus Garvey Square, 595 F.2d at 1131, restated it as the principle that a suit is against an agency only if plaintiffs can point to agency monies to satisfy a potential judgment. If no identifiable fund within the possession and control of the agency exists, the suit is in reality against the United States. For this proposition, Garvey cited Burr and the sovereign immunity classics Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963), and Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012-13, 91 L.Ed. 1209 (1947). The Garvey court concluded that because no such fund could be found, Claims Court jurisdiction was exclusive despite a sue-or-be-sued clause: Recovery would be against the U.S. and could be had only pursuant to the Tucker Act waiver.
 
 
 23
 It is at this point that confusion becomes evident. The practical weakness of the idea that recovery of funds within an agency's control is not recovery against the United States is, we think, well exposed by the Fourth Circuit's observation that "[t]he funds appropriated to HUD ... clearly originate in the public treasury, and they do not cease to be public funds after they are appropriated." Portsmouth, 706 F.2d at 473-74. Cf. Kauffman v. Anglo-American School of Sofia, 28 F.3d 1223, 1227-28 (D.C.Cir.1994) ("[D]iversion of resources from a private entity created to advance federal interests has effects similar to those of diversion of resources directly from the Treasury.").[3]
 
 
 24
 The logical fallacy is just as clear. To ascertain whether a suit is against the United States, rather than a federal agency, the Marcus Garvey court and similar cases have turned to the test enunciated in Dugan and Land. See, e.g., Portsmouth, 706 F.2d at 473 (citing Dugan); Industrial Indemnity, 615 F.2d at 646 (citing both); Marcus Garvey, 595 F.2d at 1131 (citing both). But this test was designed to distinguish suits against private individuals from ones against the sovereign; it identifies those cases in which sovereign immunity vel non exists. See Dugan, 372 U.S. at 620, 83 S.Ct. at 1006; Land, 330 U.S. at 738, 67 S.Ct. at 1012-13. Federal agencies or instrumentalities performing federal functions always fall on the "sovereign" side of that fault line; that is why they possess immunity that requires waiver. To say that suits against agencies are not against the United States in that sense is simply wrong; to say that they are against the United States and not the agency is to make "sue-or-be-sued" clauses nullities. The idea that the Dugan test may be used to draw two different lines--the line between suits against the United States and ones against private persons, and the line between suits against the United States and ones against its agencies--is confused at its core and we reject it.[4] The source of funds for any recovery in this case may become an issue, but it is not jurisdictional and does not bear on whether a suit against the FDIC as Receiver is a suit against the United States for purposes of § 2401(a).
 
 
 25
 * * *
 
 
 26
 So we find the argument the FDIC did not make no more persuasive than the one it did. Focusing on the waiver of immunity is valuable, however, because it permits a deeper understanding of the nature of § 2401(a) and discloses a functional rationale for its application that is perhaps more satisfying than its historical origins in the Tucker Act. As a consequence of the different waivers of immunity available, plaintiffs suing the FDIC have a fairly wide choice of forum, at least if they sue in contract.[5] They may bring suit in the Court of Federal Claims, if they have a Tucker Act suit for more than $10,000; they may bring a Tucker Act suit for a lesser amount in either the Court of Federal Claims or a district court; and they may sue in any court of law or equity under the FDIC sue-or-be-sued clause. The question of whether to apply 28 U.S.C. § 2401(a) comes down to whether a specific limitations period is somehow tied to the choice of forum.
 
 
 27
 According to the FDIC, it should be: A suit under the sue-or-be-sued clause, naming the FDIC as Receiver, should be subject to the appropriate state statute of limitations. A Tucker Act suit naming the United States should be subject to § 2401(a). What to do with a Tucker Act suit that does not name the United States as defendant (a small but nonempty class, see, e.g., Kline v. Cisneros, 76 F.3d 1236 (D.C.Cir.1996); cf. Optiperu v. Overseas Private Investment Corporation, 640 F.Supp. 420, 421 (D.D.C.1986)), is unclear. This sort of approach might make some sense if the Tucker Act and the sue-or-be-sued clause provided distinct causes of action. What each provides, however, is simply a waiver of sovereign immunity; the causes of action will be based on the contracts at issue. Accordingly, we can see no basis for tying the limitations period to the source of jurisdiction.
 
 
 28
 More specifically, § 2401(a) represents Congress's general qualification--on the limitations issue--of its consent to suit against the United States. See Saffron, 561 F.2d at 941. To conclude that it applies, we need only find that the waiver contained in FIRREA's sue-or-be-sued clause did not displace it and thereby install whatever state law might fill the gap. This we have no difficulty doing; the FIRREA sue-or-be-sued clause does not usually operate to the exclusion of other federal statutes. See Meyer, 510 U.S. at 476, 114 S.Ct. at 1000-01. "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 
 29
 So ordered.
 
 
 
 [1]
 These decisions have often been cursory or unclear in their treatment of the Receiver/Corporate distinction, but the FDIC gives us no persuasive reason why the distinction makes a difference here. The RTC as Receiver did not inherit this contract from defunct depositories; it entered into the contract in furtherance of its statutory mission, and the rights and obligations at issue are its rights and obligations, not those of the depositories. Cf. O'Melveny, 512 U.S. at 85-87, 114 S.Ct. at 2053-55 (discussing role of FDIC as Receiver)
 
 
 [2]
 We address this argument despite the FDIC's failure to raise it because, in some guises, it has jurisdictional overtones. See, e.g., Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 56 (2d Cir.1985) (source of funds to pay judgment is jurisdictional issue)
 
 
 [3]
 The effects are similar because, regardless of the origin of the funds, their loss forces the Government "to choose between allowing its interests to be served less well and spending more money to make up the shortfall." Kauffman, 28 F.3d at 1227. It may sometimes be true, of course, that enough claims have already been allowed against a discrete fund to exhaust it, so that allowing a new claim will change the distribution to claimants but have no other effect on governmental interests. That might occur where the FDIC is merely determining claims that accrued against a depository institution before the FDIC's appointment as receiver, and will use only the institution's assets to satisfy the claims pro rata. As discussed in note 1, supra, this case is different
 
 
 [4]
 Distinguishing between suits against agencies and those against the United States would frequently be necessary if Tucker Act jurisdiction were preemptive--that is, if Tucker Act jurisdiction by its mere existence barred jurisdiction granted by another statute. It does not. If a separate waiver of sovereign immunity and grant of jurisdiction exist, district courts may hear cases over which, under the Tucker Act alone, the Court of Federal Claims would have exclusive jurisdiction. See Bowen v. Massachusetts, 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 2740 n. 48, 101 L.Ed.2d 749 (1988); First Virginia Bank v. Randolph, 110 F.3d 75, 77 (D.C.Cir.1997)
 
 
 [5]
 Tort claims are different; the Federal Tort Claims Act provides the exclusive avenue for relief where it applies. See 28 U.S.C. § 2679(a); FDIC v. Meyer, 510 U.S. 471, 476, 114 S.Ct. 996, 1000-01, 127 L.Ed.2d 308 (1994)