**FOREST GUARDIANS, a non-profit New Mexico Corporation,**
Plaintiff,

v.

**UNITED STATES FOREST SERVICE, Dale Bosworth, Chief of the United States Forest Service, Eleanor Towns, Regional Forester of United States Forest Service Region III, United States Department of Agriculture, Ann Veneman, Secretary of the United States Department of Agriculture,** Defendants.

No. CIV. 01–330TUCCKJ.

United States District Court,
D. Arizona.

March 23, 2004.

980

Scott C. Cameron, Forest Guardians, Santa Fe, NM, Gary O'Dea, O'Dea Law Firm, Albuquerque, NM, for Plaintiff.

Clay Samford, Robert L. Gulley, Jean Williams, U.S. Dept. of Justice, Washington, DC, Barclay T. Samford, U.S. Dept. of Justice, Denver, CO, Monte C. Clausen, Esq., Richard Evan Gordon, Esq., U.S. Attorney's Office, Tucson, AZ, for Defendants.

## ORDER

JORGENSON, District Judge.

Pending before the Court is Plaintiff's Motion for Summary Judgment [Doc. # 61] and Defendants' Cross–Motion for Summary Judgment [Doc. # 67]. The parties have not requested oral argument. The Court finds this matter appropriate for resolution without oral argument.

*Procedural Background*

On July 9, 2001, Plaintiff Forest Guardians ("Forest Guardians") filed a Complaint in the United States District Court. Following motions to dismiss, a Second Amended Complaint was filed on December 9, 2002. The Second Amended Complaint alleges that Defendants United States Forest Service, Dale Bosworth, Eleanor Towns, United States Department of Agriculture, and Ann Veneman (collectively, "USFS") have failed to comply with environmental statutes with respect to water diversions and associated water transmission facilities. Forest Guardians request declaratory and injunctive relief. On July 9, 2003, Forest Guardians moved to voluntarily dismiss twenty-three of the permit or easement actions. Claims regarding four water diversions and associated water transmission facilities remain pending before the Court: Permit 5132–01, referred to in the record as Cosper Dam/Ditch, Permit 4132–02, referred to in the record as Gisela Community Ditch Association Easement, Permit COC193, referred to in the record as Dancing Apache Ditch, and Permit COC191, referred to in the record as Diamond S Ditch.

On August 5, 2003, Forest Guardians filed a Motion for Summary Judgment. On September 8, 2003, USFS filed a Cross–Motion for Summary Judgment and a Response to Forest Guardians' Motion for Summary Judgment. Forest Guardians have not filed a Response to the Cross–Motion for Summary Judgment or a Reply to the Response.

*The Mining Act of 1866*

The Mining Act of July 26, 1866, 14 Stat. 253, later codified at 43 U.S.C. § 661 (repealed in part 1976) ("the Mining Act") provided federal recognition of water rights and rights-of-way for diversion and conveyance structures that had been constructed across the public domain before those lands were reserved by the federal government. *Jennison v. Kirk*, 98 U.S. 453, 456, 8 Otto 453, 25 L.Ed. 240 (1878). The United States Supreme Court determined that those water rights and rights-of-way for diversion and conveyance structures should be acknowledged and confirmed. *Jennison*, 98 U.S. at 460, 98 U.S. 453. The acquisition of a right-of-way under the Mining Act required no federal action or approval because the Mining Act merely extended federal protection to rights created by state-law or local custom. *Utah Power & Light Co. v. United States*, 243 U.S. 389, 405, 37 S.Ct. 387, 61 L.Ed. 791 (1917). Once a right-of-way was acquired, the Mining Act ensured that the right-of-way would not be destroyed in the event the land were to pass out of the public domain. *Jennison*, 98 U.S. at 460, 98 U.S. 453.

*The Federal Land Policy Management Act*

The Federal Land Policy Management Act ("FLPMA") repealed all prior laws granting rights-of-way across federal lands and replaced them with a single mechanism for establishing a right-of-way over public lands. *United States v. Jenks*, 22 F.3d 1513, 1515 (10th Cir.1994). The FLPMA authorizes the Secretary of the Interior and the Secretary of Agriculture to grant, issue, or renew rights-of-way for water diversion structures. 43 U.S.C. § 1761(a)(1). Depending where an activity will take place, the Secretary of Agriculture is to use different standards to determine whether a permit should be granted.

36 C.F.R. § 297.5(a); *see also* 16 U.S.C. § 1278. The FLPMA did not terminate rights-of-way that had been previously issued and, in fact, specifically protected those rights. 43 U.S.C. §§ 1769(a) and 1761(c)(2)(A).

## Endangered Species Act

 The Endangered Species Act ("ESA") requires each federal agency to insure any action authorized, funded, or carried out by such agency "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species[.]" 16 U.S.C. § 1536(a)(2). Once a species has been afforded protection, federal agencies must comply with the procedural and substantive requirements contained in the ESA. *Sierra Club v. Babbitt*, 65 F.3d 1502, 1504 (9th Cir.1995). Whenever a federal action may affect a listed species (endangered or threatened species) or a critical habitat, formal consultation is required. 50 C.F.R. § 402.14(a). "Formal consultation is excused only where (1) an agency determines that its action is unlikely to adversely affect the protected species or habitat, *and* (2) the relevant Service (FWS or NMFS) concurs with that determination." *Natural Resources Defense Council v. Houston*, 146 F.3d 1118, 1126 (9th Cir. 1998).

Following the formal consultation, the consulting agency is to issue a biological opinion that assesses whether the action, "taken together with cumulative effects, is likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of critical habitat." 50 C.F.R. § 402.14(g)(4); *see also* 50 C.F.R. 402.14(g)(3) (consulting agency is to evaluate the effects of the action that will be added to the environmental baseline); 50 C.F.R. 402.14(h)(3).

## National Environmental Policy Act

The National Environmental Policy Act ("NEPA") requires an agency, when proposing a major federal action that may significantly affect the quality of the human environment, to prepare an Environmental Impact Statement ("EIS") in which the agency must examine: (1) the impacts of the proposed action; (2) any adverse environmental effects of the action that cannot be avoided; (3) alternatives to the proposed action; (4) the relationship between local, short-term uses of the environment and the maintenance and enhancement of long-term productivity, and; (5) any irreversible and irretrievable commitment of resources which would be involved. 42 U.S.C. § 4332. An Environmental Assessment ("EA") may be prepared to provide evidence and analysis to determine whether an EIS needs to be prepared or if a finding of no significant impact may be made. 40 C.F.R. § 1508.9(a)(1); *Metcalf v. Daley*, 214 F.3d 1135 (9th Cir.2000). A Categorical Exclusion ("CE") may be issued if the action belongs to a predetermined category of actions which do not, individually or cumulatively, have a significant effect on the human environment. 40 C.F.R. § 1508.4.

## Wild and Scenic Rivers Act

The Wild and Scenic Rivers Act ("WSRA") provides that certain designated rivers which possess "outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, cultural, or other similar values, shall be preserved in free-flowing condition, and ... shall be protected for the benefit and enjoyment of present and future generations." 16 U.S.C. § 1271. The WSRA provides substantive protections for designated rivers and short-term protection for study river. 16 U.S.C. § 1278. In enacting the WSRA, Congress designated some rivers for inclusion and also provided several procedures

whereby additional rivers could be designated.

*Motion for Summary Judgment*

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. However, where an action challenges a final decision of an administrative agency, the standard analysis is not utilized. The Ninth Circuit Court of Appeals has held:

> Occidental contests the district court's grant of summary judgment on the grounds that there exist disputed issues of material fact. But there are no disputed facts that the district court must resolve. That court is not required to resolve any facts in a review of an administrative proceeding. Certainly, there may be issues of fact before the administrative agency. However, the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. De novo factfinding by the district court is allowed only in limited circumstances that have not arisen in the present case. [Citations omitted.] The appellant confuses the use of summary judgment in an original district court proceeding with the use of summary judgment where, as here, the district court is reviewing a decision of any administrative agency which is itself the finder of fact. In the former case, summary judgment is appropriate only when the court finds there are no factual issues requiring resolution by trial. In the latter case, summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did.

*Occidental Engineering Co. v. INS,* 753 F.2d 766, 769–70 (9th Cir.1985); *see also* *Friends of the Earth v. Hintz,* 800 F.2d 822 (9th Cir.1986). The Administrative Record is before the Court in this case. Although the parties allege disputed facts contained within the Administrative Record, neither party has indicated that *de novo* factfinding by the Court is needed. The Court must, therefore, determine whether the USFS acted appropriately and is entitled to judgment as a matter of law or whether, to the contrary, it failed to do so and Forest Guardians are entitled to judgment.

*Standard of Review*

"Agency decisions under ESA are governed by the Administrative Procedure Act, which requires an agency action to be upheld unless it is found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Pacific Coast Federation Of Fishermen's Associations, Inc. v. National Marine Fisheries Service,* 265 F.3d 1028, 1034 (9th Cir.2001). Additionally, a court may set aside an agency action if the action was 'without observance of procedure required by law.' *Houston,* 146 F.3d at 1125, *quoting* 5 U.S.C. § 706(2)(A).

Because the NEPA and the WSRA do not provide an independent cause of action, challenges brought pursuant to those Acts are subject to the review provided in the Administrative Procedure Act ("APA"). *ONRC Action v. Bureau of Land Management,* 150 F.3d 1132, 1135 (9th Cir.1998); *Hells Canyon Alliance v. United States Forest Service,* 227 F.3d 1170 (9th Cir. 2000).

Final agency action that is arbitrary, capricious, or an abuse of discretion is to be set aside. 5 U.S.C. § 706(2)(A). A decision is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation

for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturers Association of U.S., Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). "Review under the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency." *O'Keeffe's, Inc. v. U.S. Consumer Product Safety Commission*, 92 F.3d 940, 942 (9th Cir.1996). Additionally, where there is no final agency action and the relief sought is to compel agency action, the Court considers whether agency action has been unlawfully withheld or unreasonably delayed. *Friends of the Clearwater v. Dombeck*, 222 F.3d 552 (9th Cir.2000); 5 U.S.C. § 706(1).

The party bringing an APA action bears the burden of demonstrating that an agency's actions were in violation of the act. *See Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 281, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994); *Committee to Preserve Boomer Lake Park v. Department of Transportation*, 4 F.3d 1543, 1555 (10th Cir.1993); *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir.1995).

*Cosper Dam/Ditch*

■ The Cosper Dam/Ditch is a diversion dam and an irrigation ditch that diverts water from the San Francisco River in the Gila National Forest to private lands. The permit was issued on February 14, 1994, and expired at midnight on December 31, 2003. Where the issues presented are no longer live and the parties, therefore, lack a legally cognizable interest for which courts can grant a remedy, an action is generally mooted. *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). However, an exception exists for "extraordinary cases where '(1) the duration of the challenged action is

too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again.'" *Alaska Center for the Environment v. U.S. Forest Service*, 189 F.3d 851, 854–55 (9th Cir.1999), *quoting Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir.1992). In this case, the permit was issued nearly ten years ago. The Court finds the duration of the challenged action was not too short to allow full litigation before the permit expired and, therefore, this claim is moot.

■ Moreover, other than an exception not relevant here, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). As soon as a person challenging the agency action can institute and maintain a suit in court the cause of action against an administrative agency accrues within the meaning of 28 U.S.C. 2401(a). *Spannaus v. United States Dept. of Justice*, 824 F.2d 52, 56 (D.C.Cir.1987).

■ Challenges pursuant to the APA, including NEPA challenges, and ESA citizen suit provisions are governed by 28 U.S.C. § 2401(a). *Auction Co. of America v. FDIC*, 132 F.3d 746, 749 (D.C.Cir.1997); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 712 (9th Cir.1991). When the special use permit was issued on February 14, 1994, Forest Guardians' cause of action accrued. Forest Guardians filed the original action on July 9, 2001; the challenge to the Cosper Dam/Ditch permit is time-barred.

*Gisela Community Ditch Association Easement*

■ The Gisela Community Ditch Association Easement ("Gisela Ditch"), issued on March 6, 1998, is an easement for water conveyance system facilities on the Tonto

National Forest. The water from the Gisela Ditch conveys the water from the Tonto Creek to private lands within the unincorporated community of Gisela, Arizona. The Gisela Ditch has been in use continuously since 1876.

Forest Guardians assert that no NEPA or ESA documentation is presented in the record for the issuance of a 1994 special use permit for the ditch and a 1998 easement for the ditch. Although a temporary special use permit was issued in 1993 for the Gisela Ditch, the 1994 special use permit was never signed by Gisela Ditch, i.e., it was rejected. The Court finds there is no agency action to review as to the 1994 special use permit. Forest Guardians further assert that the USFS must update the ESA compliance for the Gisela Ditch in light of the listing of the spikedace, loach minnow, and southwestern willow flycatcher as endangered and the designation of critical habitat for these species.

■ In issuing the 1993 temporary special use permit, a Biological Evaluation was prepared by the USFS. The impact of the project on threatened and endangered species was evaluated. The USFS found that no threatened or endangered species were present and, therefore, the project would have no effect on the threatened or endangered species. The USFS further determined that the grant of the temporary special use permit qualified for the categorical exclusion in 31.2 at 3(h) of the Forest Service Handbook and no extraordinary circumstances precluded the use of the categorical exclusion. *See* 57 Fed.Reg. 43180, 43209 (September 18, 1992), Forest Service Handbook, § 1909.15, 31.2 at 3(h).

Gisela Ditch applied for a FLPMA Ditch Bill easement pursuant to 43 U.S.C. § 1761(c) ("Ditch Bill easement"). The USFS reviewed the 1993 Biological Evaluation and determined that the information was current and valid. In issuing the 1998 Ditch Bill easement to Gisela Ditch, the USFS found that no plants or animals or habitat for threatened and endangered species are affected. Because the Ditch Bill easement qualified for a categorical exclusion, the USFS determined that the issuance of the easement did not require NEPA analysis.

In finding that the Ditch Bill easement qualified for the categorical exclusion (and thereby required no further NEPA analysis), the USFS not only considered the 1993 finding that no plants or animals or habitat for threatened and endangered species were affected, but also considered a 1993 cultural resource survey that found the reconstructed segment had no impact. The USFS determined that the Gisela Ditch easement would continue an established use with no ground disturbing activity. The USFS determined that the grant of the Ditch Bill easement qualified for a categorical exclusion because the easement constituted "the continued use of land where such use has not changed since authorized and no change in the physical environment or facilities are proposed." 57 Fed.Reg. at 43209, Forest Service Handbook, § 1909.15, 31.2 at 3(h). Moreover, the USFS determined that the grant of the Ditch Bill easement would have no significant effect on the quality of the environment. The Court finds the USFS did not act arbitrarily, capriciously, or with an abuse of discretion in determining that no further NEPA analysis was required.

Moreover, the USFS determined that no threatened or endangered species were present and, therefore, the Ditch Bill easement would have no effect on threatened and endangered species. In making such a determination, the USFS considered the Biological Assessment of the Effects of Implementing Direction Contained in the Tonto National Forest Land and Resource Management Plan. This Plan evaluated listed species, location of listed species,

and critical habitat of listed species on the Tonto National Forest. The USFS also considered the opinion of Don Pollock, a Wildlife Biologist, as to the location of critical habitat. Based on its determination that the Ditch Bill easement would have no effect on threatened and endangered species, the USFS determined that formal consultation pursuant to the ESA was not required. 50 C.F.R. § 402.14(a); *Houston*. The Court finds the USFS did not act arbitrarily, capriciously, or with an abuse of discretion in determining that the Ditch Bill easement would have no effect on threatened and endangered species.

 Forest Guardians also assert that the USFS must update its ESA and NEPA compliance. Where a federal agency has retained some measure of control over an activity, the ESA applies to prior agreements. *Klamath Water Users Protective Association v. Patterson*, 204 F.3d 1206, 1213 (9th Cir.1999). Indeed, " 'Congress foresaw that § 7 would, on occasion, require agencies to alter ongoing projects in order to fulfill the goals of the Act.' " *Pacific Rivers Council v. Thomas*, 30 F.3d 1050, 1055 (9th Cir.1994), *quoting TVA v. Hill*, 437 U.S. 153, 186, 98 S.Ct. 2279, 2298, 57 L.Ed.2d 117 (1978). However, the United States Supreme Court specifically recognized that there could be no retroactive application under the ESA. *Hill*, 437 U.S. at 187 n. 32, 98 S.Ct. at 2298 n. 32. In this case, an agency has not retained some measure of control over the Ditch Bill easement. In fact, the USFS only retained the ability to terminate the Ditch Bill in limited, specific circumstances.[1] However, the USFS did not retain that ability to reconsider the Ditch Bill easement for newly listed species or newly designated critical habitat. There is no ongoing agency activity and there is no requirement that the agency reconsider an easement when new species are listed. *See Environmental Protection Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1081 (9th Cir.2001) (rejecting the argument that an agency's generalized discretion requires a permitting agency to reopen a permit when new species have been listed).

Similarly, NEPA is only triggered by *proposed* federal actions that may significantly affect the quality of the human environment. 42 U.S.C. § 4332; *Upper Snake River Chapter of Trout Unlimited v. Hodel*, 921 F.2d 232 (9th Cir.1990) (NEPA does not apply retroactively; NEPA is not triggered where agency is doing nothing new); *see also Defenders of Wildlife v. Andrus*, 627 F.2d 1238, 1246 (D.C.Cir. 1980).

Moreover, the Ditch Bill easement is a permanent easement pursuant to 43 U.S.C. § 1761(c). Congress provided that where an application meets the requirements of that subsection, an easement *shall* be issued. Congress did not provide for any discretion to remain with the federal agency. In other words, there is no continuing discretionary agency involvement or control of the Ditch Bill easement; "the agency simply does not possess the ability to implement measures that inure to the benefit of the protected species." *Sierra Club v. Babbitt*, 65 F.3d at 1509; *see also Environmental Protection Information Center v. Simpson Timber Co.*, 255 F.3d 1073 (9th Cir.2001). The Court finds the USFS' failure to update its ESA and NEPA analyses was not arbitrary, capricious, or an abuse of discretion. The Court further finds that agency action has not been unlawfully withheld or unreasonably delayed.

---

1. For example, the easement may be terminated if Gisela Ditch fails to exercise the rights and privileges of the Gisela Ditch easement for a continuous period of five years or more or if Gisela Ditch uses the water conveyance system for any purpose other than agricultural irrigation or livestock watering.

■ Forest Guardians further assert that a determination has not been made with respect to the ditch's impact on the WSRA eligible section of Tonto Creek. However, the substantive protections of § 7 of the WSRA only apply to rivers designated by Congress as part of the WSR system under § 3 or as a study river under § 5(a). The Administrative Record does not establish that the Tonto Creek has been designated as part of the WSR system or as a study river. Therefore, the requirements of § 7 of the WSRA do not apply to the Tonto Creek. The Court finds the USFS' failure to conduct a WSRA analysis was not arbitrary, capricious, or an abuse of discretion. The Court further finds that agency action has not been unlawfully withheld or unreasonably delayed.

*Dancing Apache Ditch and Diamond S Ditch*

■ The Dancing Apache Ditch is a dam and diversion ditch in the Coconino Forest. The Dancing Apache Ditch has been in place and used continuously since at least February 1898. The Coconino National Forest was reserved on August 17, 1898. Forest Guardians assert the NEPA categorical exclusion and ESA biological assessment are stale due to designation of critical habitat for the spikedace and loach minnow. Forest Guardians further assert that a determination pursuant to the WSRA on the impacts to the Verde River has not been conducted.

The Diamond S Ditch, which crosses Coconino National Forest land, diverts water from the Verde River. This ditch has been in continuous use since at least 1892. The ditch is located on a portion of the Coconino National Forest which was reserved on September 29, 1919. Forest Guardians assert that no final compliance documentation exists under the NEPA or the ESA. Forest Guardians further assert that the USFS has not made a determina-

tion regarding the impacts to the Verde River pursuant to the WSRA.

The Dancing Apache Ditch and Diamond S Ditch began diverting water across public domain land prior to the reservation of the Coconino National Forest. The record establishes that the USFS did process easement applications for the Dancing Apache Ditch and the Diamond S Ditch. However, the right-of-way holders elected to continue operating pursuant to the Mining Act and thereby declined to accept the easements.

Because the Dancing Apache Ditch and the Diamond S Ditch operate pursuant to a grant of Congress rather than a USFS authorization, the USFS has not taken any action that triggers an obligation under the ESA or the NEPA. *See Turtle Island Restoration Network v. National Marine Fisheries Service,* 340 F.3d 969, 974 (9th Cir.2003) (the ESA does not apply where there is no agency discretion to act); *Hodel,* 921 F.2d 232 (9th Cir.1990) (the NEPA does not apply retroactively); *see also Sierra Club v. Babbitt; Simpson Timber Co.* The Court finds the USFS' failure to conduct NEPA and ESA, analyses was not arbitrary, capricious, or an abuse of discretion. The Court further finds that agency action has not been unlawfully withheld or unreasonably delayed.

■ Forest Guardians assert the Dancing Apache Ditch and the Diamond S Ditch are within the protected portion of the Verde River. However, Forest Guardians have not disputed Paul Wachter's declaration that establishes that the Dancing Apache Ditch and the Diamond S Ditch are not within the Verde Wild and Scenic River Area. Even if the Dancing Apache Ditch and the Diamond S Ditch are within the Verde Wild and Scenic River Area, the Administrative Record does not establish that the USFS has unlawfully withheld agency action.

988

Where the diversion is above or on a stream tributary to a wild and scenic river, § 7 of the WSRA provides that federal agencies cannot assist in the construction of that project if it would "invade the area or unreasonably diminish the scenic, recreational, and fish and wildlife values present in the area on the date of designation of a river as a component of the National Wild and Scenic Rivers System." 16 U.S.C. § 1278(a). The Dancing Apache Ditch and Diamond S Ditch were constructed prior to the reservation of the Coconino National Forest and the designation of the Verde Wild and Scenic River Area. The USFS did not assist in the construction of either of the ditches. Section 7 of the WSRA does not require the USFS to retroactively examine projects in existence at the time of a river's designation. The Court finds that the USFS did not unlawfully withhold agency action.

Accordingly, IT IS ORDERED:

1. Forest Guardians' Motion for Summary Judgment [Doc. # 61] is DENIED;

2. USFS' Cross–Motion for Summary Judgment [Doc. # 67] is GRANTED;

3. Forest Guardians' Second Amended Complaint is DISMISSED;

4. This action is DISMISSED WITH PREJUDICE, and;

5. The Clerk of the Court shall enter judgment and shall then close its file in this matter.