Gilbert W. GALVAN, Appellant,

v.

**FEDERAL PRISON INDUSTRIES, INC., Appellee.**

No. 98–5472.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1999.

Decided Dec. 21, 1999.

Thomas G. Corcoran, Jr. argued the cause and was on the briefs for appellant.

Sally M. Rider, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: EDWARDS, Chief Judge, WILLIAMS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

The False Claims Act encourages private parties to help fight fraud on the United States by giving them the power to bring civil actions in its name, and by providing both the government and the private party—known as the "relator"—a share of any financial recovery and reimbursement for their costs, including attorneys' fees. 31 U.S.C. §§ 3729–3730 (1994). Under the Act any person who knowingly presents false or fraudulent claims to an officer or employee of the United States may be liable. *Id.* § 3729(a). Gilbert W. Galvan, an inmate at the Federal Correctional Institution in Oxford, Wisconsin, filed such an action—often called by its Latin shorthand, *qui tam* (an abbreviation of *qui tam pro domino rege quam pro se ipso in hac parte sequitur*) [1]—against his employer, Federal Prison Industries, Inc. ("FPI"). He alleged that it had falsely certified that the communication cables and weapons parts that it produced for the Department of Defense had been adequately tested and met the requisite quality standards.

FPI is no ordinary employer; it is a "wholly owned government corporation," created to further the Bureau of Prison's goal of providing meaningful work for inmates confined in federal institutions. See *id.* § 9101; 28 CFR § 345.10 (1999). But the suit had been brought in the name of the government, 31 U.S.C. § 3730(b)(1), and it is accordingly entitled to intervene, 31 U.S.C. § 3730(b)(2), which it did here. This put the Department of Justice in place as counsel on both sides of the action. It then moved under § 3730(c)(2)(A) for dismissal of the suit, arguing that the court lacked subject matter jurisdiction because Galvan's *qui tam* action pitted the United States executive branch against itself. Further, representing the FPI itself, the government moved to dismiss on grounds of sovereign immunity. The district court accepted the nonjusticiability argument, and never reached the issue of sovereign immunity. We agree with the government's sovereign immunity defense and affirm the dismissal on that ground, leaving for another day the question of justiciability.

---

1. Black's Law Dictionary translates the phrase as "who as well for the king as for himself sues in this matter." Black's Law Dictionary 1262 (7th ed.1999). There are other versions of the complete Latin phrase, but none appears meaningfully different. See, e.g., *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 746 n. 3 (9th Cir.1993) (*"qui tam pro domino rege quam pro se imposo sequitur"*); *Miami Copper Co. v. State*, 17 Ariz. 179, 149 P. 758, 761 (Ariz.1915) (*"qui tam pro domino rege, etc., quam pro se ipso in hac parte sequitur"*).

■ Before addressing sovereign immunity we must be sure that we may properly do so before deciding whether the suit presents a case or controversy. Jurisdiction must be established before a federal court may proceed to any other question. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). But later cases make clear what was implicit in *Steel Co.*: There is an array of non-merits questions that we may decide in any order. Thus in *Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999), the Court held that it may be perfectly proper for a court to resolve personal jurisdiction, which is waivable, without having first determined subject matter jurisdiction. "[T]here is no unyielding jurisdictional hierarchy." *Id.* at ——, 119 S.Ct. at 1567. And in *In re Minister Papandreou*, 139 F.3d 247, 255 (D.C.Cir.1998), we considered an immunity defense despite considerable doubts about the plaintiffs' standing, saying that "a court that dismisses on other non-merits grounds . . . makes no assumption of law-declaring power that violates the separation of powers principles." *Id.* at 255.

■ Sovereign immunity questions clearly belong among the non-merits decisions that courts may address even where subject matter jurisdiction is uncertain. The Supreme Court has characterized the defense as jurisdictional, *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), even while recognizing that it can be waived, *id.* See also *Deaf Smith County Grain Processors, Inc. v. Glickman*, 162 F.3d 1206 (D.C.Cir.1998); *First Va. Bank v. Randolph*, 110 F.3d 75, 77 (D.C.Cir.1997). And in *Papandreou* itself, we resolved the case on immunity grounds, despite the presence of a defense that we assumed arguendo was a matter of Article III standing. 139 F.3d at 255. Similarly, we here address sovereign immunity and do not reach justiciability.

\* \* \*

■ Galvan argues that FPI is not entitled to sovereign immunity because it is not, in fact, part of the sovereign. He is mistaken. A suit is against the sovereign when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration." *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (quoting *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)). FPI is a wholly owned Government corporation, see 31 U.S.C. § 9101, and all money under FPI's control is held by the U.S. Treasury to the credit of FPI. See 18 U.S.C. § 4126(a) (1994). Thus, any judgment in Galvan's favor would require FPI to pay damages directly from the public treasury. See generally *Sprouse v. Federal Prison Industries, Inc.*, 480 F.2d 1, 3 (5th Cir.1973) ("[T]hough the prisoners vehemently deny it, 'the conclusion is inescapable that the suit is essentially one designed to reach money which the government owns.'" (quoting *Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371, 375, 66 S.Ct. 219, 90 L.Ed. 140, (1945))).

■ Pointing to 18 U.S.C. § 4126(b), which says that "[a]ll valid claims and obligations payable out of said fund [the FPI fund at Treasury] shall be assumed by the corporation," Galvan characterizes the corporation as "self-sufficient." This is quite immaterial. "Federal agencies or instrumentalities performing federal functions *always* fall on the 'sovereign' side of [the] fault line" between suits against the sovereign and suits against individuals, regardless of any independence of accounts. *Auction Co. of America v. FDIC*, 132 F.3d 746, 752 (D.C.Cir.1997). "Diversion of resources from a private entity created to advance federal interests has effects similar to those of diversion of resources directly from the Treasury." *Id.* In fact, as a government corporation FPI is not only a federal instrumentality but is also an "executive agency," 5 U.S.C. § 105, and on that account deserves sovereign immunity in the absence of congressional waiver.

See *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").

 Galvan argues that Congress waived FPI's immunity both in FPI's organic statute, 18 U.S.C. § 4121, and in the False Claims Act, 31 U.S.C. § 3729. We first note the rather steep incline that the Supreme Court has said a court must climb before finding a waiver of the federal government's sovereign immunity. Such waivers must be "unequivocally expressed in statutory text, and will not be implied." *Lane v. Peña*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (internal citations omitted). If ambiguous, statutes must be construed in favor of immunity. See *United States v. Williams*, 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). So long as a statute supposedly waiving immunity has a "plausible" non-waiver reading, a finding of waiver must be rejected. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 37, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) ("plausible" alternative reading is enough to establish that a "reading imposing monetary liability on the Government is not 'unambiguous' and therefore should not be adopted."). With this in mind we turn to Galvan's specific claims.

*FPI's Organic Statute.* Congress established FPI as "a government corporation of the District of Columbia." 18 U.S.C. § 4121. Galvan would have us read this as manifesting a congressional intent to give FPI the legal characteristics of an ordinary corporation established under the general corporation law of the District of Columbia. That law states that such corporations are "capable of suing and being sued in any court of law or equity in the District," D.C.Code Ann. § 29–203 (1999),[2] language which if applicable would constitute a waiver. See *Meyer*, 510 U.S. at 480, 114 S.Ct. 996; *FHA v. Burr*, 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724 (1940).

On the surface (later we look below the surface) § 4121 seems capable of the meaning Galvan proposes. But there are alternative meanings that seem plausible—namely readings of § 4121 as intended to establish a different kind of link with the District of Columbia. Thus Congress may have intended to specify that the headquarters of FPI should be in the District (as it in fact is, see Federal Prison Industries 1996 Annual Report 82). Congress has so provided, more specifically to be sure, in other statutes. See, e.g., 22 U.S.C. § 2199(a) ("The [Overseas Private Investment] Corporation shall have its principal office in the District of Columbia."); 12 U.S.C. § 4703(a)(1) ("The offices of the [Community Development Financial Institutions] Fund shall be in Washington, D.C."). Or Congress may have intended to locate FPI in the District specifically for purposes of venue, as it has for other government corporations. See 22 U.S.C. § 2199(a) (Overseas Private Investment Corp. deemed to be a resident of the District of Columbia "for purposes of venue in civil actions"); 22 U.S.C. § 3611(b) (Panama Canal Commission "is an inhabitant and resident of the District of Columbia"); cf. 7 U.S.C. § 1506(d) ("Any suit against the [Federal Crop Insurance] Corporation shall be brought in the District of Columbia, or in the district wherein the plaintiff resides."). Because 28 U.S.C. § 1391(e) provides venue for suits against "an agency of the United States" in any judicial district where the defendant "resides," a congressional purpose simply to establish the central administration in Washington would have the consequence of locating venue in the District for any case against FPI brought under general waivers of sovereign immunity such as the Tucker Act, see *id.* §§ 1346, 1491.

In deciding on the plausibility of the above interpretations, it is worth noting how precisely Congress has spoken in instances where it sought to incorporate at-

2. This provision was codified at Code D.C. § 607 when FPI was first established.

tributes established by D.C.'s general corporation law. See 29 U.S.C. § 1302(b) ("The [Pension Benefit Guaranty] corporation has the powers conferred on a nonprofit corporation under the District of Columbia Nonprofit Corporation Act."); cf. 40 U.S.C. § 875 (allowing Pennsylvania Avenue Development Corporation to· condemn property under the procedural provisions of a specific subchapter of the D.C.Code). The same is true of Section 11 of the Shipping Act of Sept. 7, 1916, 39 Stat. 728, 731, which allowed the United States Shipping Board to "form under the laws of the District of Columbia one or more corporations." In *Sloan Shipyards Corp. v. United States Shipping Board Emergency Fleet Corp.*, 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762 (1922), the Court found that this provision effected a waiver. *Id.* at 565–68, 42 S.Ct. 386. Because of § 11's much more specific statutory language, however, *Sloan* affords Galvan no aid.[3]

Looking at the context of § 4121, we find indicators militating against Galvan's view that Congress's reference to "a government corporation of the District of Columbia" was intended to incorporate the District's corporate law by reference. Congress purposefully kept FPI out of the commercial world and limited its exposure to the courts. FPI cannot sell its products to the public in competition with private enterprise, and even for its sales to the government must diversify its operations to minimize competition with private industry and to avoid capturing more than a reasonable share of the government market for any specific product. See 18 U.S.C. § 4122(a)-(b). Purchases of FPI products are considered intragovernmental transfers, see *id.* § 4124(b), and FPI may borrow money only from the Treasury itself, see *id.* § 4129. When FPI's government customers challenge the "price, quality, character, or suitability" of its products, their only recourse is to binding arbitration before the Attorney General, the Administrator of General Services, and the President, or their representatives. See *id.* § 4124(a)-(b).

Other aspects of FPI activity are removed from judicial influence. The Attorney General has authority to promulgate rules and regulations governing inmates' compensation for injuries sustained and for work performed in connection with FPI activities, see *id.* § 4126(c)(4). The Attorney General's administrative scheme is the workers' exclusive remedy. See 28 CFR § 301.309 (1999); *United States v. Demko*, 385 U.S. 149, 152, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966).

Reading § 4121 as literally making FPI a corporation under the law of the District of Columbia creates still further puzzles and contradictions. First, the management structure of FPI conflicts directly with the laws in place when the current statutory language was adopted.[4] The D.C.Code requires annual elections for the corporation's "trustees" (the District's analogue of a director, see D.C.Code §§ 29–202,–204), see *id.* § 29–205, but FPI's

3. The current text of FPI's organic statute was adopted as part of the enactment of Title 18 of the United States Code. See Act of June 25, 1948, Pub.L. No. 80–772, 62 Stat. 683, 683. The language of the original act demonstrated even more clearly that Congress did not intend to adopt the District's corporation laws. The Act of June 23, 1934 authorized the President to "create a body corporate of the District of Columbia to be known as 'Federal Prison Industries', which shall be a governmental body." Act of June 23, 1934, Pub.L. No. 73–461, 48 Stat. 1211, 1211. Its language reinforces FPI's status as a governmental entity and suggests that its status as a corporation is generic rather than specific to the District of Columbia.

4. The following citations refer to the current District of Columbia and United States Codes, but each cited provision (with one exception) is identical in substance to the provision in effect when the current version of FPI's organic statute was adopted: 18 U.S.C. §§ 4121–4128 (1948), and D.C.Code § 29–201 to –240 (1940). The exception is that D.C.Code § 29–204 (1940) imposed a requirement that "trustees" be citizens of the District, whereas the current version does not.

board of directors is appointed by, and serves at the will of, the President. See 18 U.S.C. § 4121. The District's laws also require that trustees own stock in the company, see D.C.Code § 29–204, whereas FPI's operating capital is maintained exclusively by the Treasury of the United States. See 18 U.S.C. § 4126(a). In addition, in 1948 (the time of adoption of FPI's organic statute in approximately its current form), a majority of a corporation's trustees were required to be citizens of the District, see D.C.Code § 29–204 (1940), but it seems unlikely that this rule has bound the President in his selection of FPI's directors.

Second, Congress granted FPI considerably fewer powers than an ordinary District corporation while simultaneously imposing extra, particularly governmental, burdens. For example, a District corporation has the specific power to mortgage its property, see § 29–203, and thus implicit power to borrow money; but Congress authorized FPI to borrow money only in 1988, and in so doing limited the source of funds to the U.S. Treasury, see Pub.L. No. 100–690, 102 Stat. 4411 (codified at 18 U.S.C. § 4129 (1994)). Similarly, in employing its assets, FPI is required to meet the requirements of a government agency rather than a District corporation. It can withdraw money from its accounts "only pursuant to accountable warrants or certificates of settlement issued by the General Accounting Office," 18 U.S.C. § 4126(a), and is required to act "in accordance with the laws generally applicable to the expenditures of the several departments, agencies, and establishments of the Government," *id.* § 4126(c).

Finally, the vast majority of the District's rules are either indirectly superseded or have no relevance to FPI. For example, the District required that share-holders pay 10% of the capital stock into the corporate treasury before the corporation could transact any business. See D.C.Code § 29–209. FPI has no such capitalization requirement. The other provisions of the D.C.Code concern the activities of ordinary corporations. See, e.g., *id.* §§ 29–209 to –212, –216 to –217, –230 to –235, –239 (capitalization and stock transactions); *id.* §§ 29–218 to –219 (payment of dividends); *id.* §§ 29–205, –211, –220 to –222 (stockholder liability and voting rights). They have no apparent application to FPI. The dismal fit between FPI and the sort of private corporation clearly contemplated by the D.C.Code makes it vanishingly improbable that Congress meant to make FPI a corporation governed by that code.[5]

Galvan attempts to save his waiver argument by arguing that the typical presumption in favor of sovereign immunity should not apply to government corporations, citing *Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939). There the Court found that in authorizing the Reconstruction Finance Corporation ("RFC") to create up to twelve "regional agricultural credit corporations" and to appoint their management, Congress had not endowed the regional corporations with sovereign immunity. Because the parent corporation, the RFC, was subject to a "sue and be sued" clause, the Court found that Congress "naturally assumed" that the regional corporations would similarly lack immunity. *Id.* at 392–93, 59 S.Ct. 516. "Congress had a right to assume that the characteristic energies for corporate enterprise with which a few months previously it had endowed [the RFC] would now radiate through [the RFC] to [the regional corporations]." *Id.* at 393–94, 59 S.Ct. 516. Because FPI is

---

**5.** Section 11 of the Shipping Act of 1916, in contrast, anticipated the questions of market capitalization, stock management, and the exercise of voting rights. 39 Stat. at 731. The Act also refrained from placing governmental burdens on these corporations' spending decisions. There may be some incongruities between the management structure provisions of § 11 and the D.C.Code, but evidently none was brought to the attention of the Supreme Court in *Sloan*.

by no means the offspring of a non-immune government entity, the grounds for the inference drawn in *Keifer* are absent here.

Moreover, the Supreme Court seems to have abandoned *Keifer*'s fundamental premises. The *Keifer* Court said that "the government does not become the conduit of its immunity in suits against its ... instrumentalities merely because they do its work." *Id.* at 388, 59 S.Ct. 516. More recent cases have taken the opposite view. See *FDIC v. Meyer*, 510 U.S. at 475, 114 S.Ct. 996 ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Auction Co. of America*, 132 F.3d at 752 ("Federal agencies or instrumentalities performing federal functions *always* fall on the 'sovereign' side of th[e] fault line."). One treatise classifies *Keifer* as part of the Supreme Court's "halting and irregular" pronouncements of its doubts about sovereign immunity, standing in contrast to the "regular reiterations ... of the conventional position, which has been dominant in most recent Supreme Court decisions." Richard H. Fallon, Jr. et al., Hart & Wechsler's The Federal Courts and the Federal System 1040 (4th ed.1996). Obviously we must apply the currently "conventional" position.

In short, reading § 4121 as an incorporation of the details of the District's general corporation law (including its "sue and be sued" clause) is not especially plausible. That law has a variety of specific features that are either irrelevant to FPI or contradict provisions in its organic statute; the organic statute contemplates intra-governmental resolution of conflicts with FPI's primary customers; and the language of § 4121 is nowhere near as specific as in the recognized instances of such incorporation. More limited readings than Galvan's, simply locating FPI in the District, are at least as plausible. We find no waiver here.

■ *The False Claims Act.* Nor can we find a waiver in the False Claims Act. The Act establishes liability for any "person" who knowingly presents false or fraudulent claims. 31 U.S.C. § 3729. The term "person," however, is not defined for the relevant sections of the statute. Galvan contends that the term "person" should include government corporations because 1 U.S.C. § 1 provides that the word "person" is to include "corporations" unless "the context indicates otherwise." The government responds by invoking the counter canon that the term "person" does not ordinarily include the sovereign. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citing *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 667, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979)).

The parties also point to specific contextual elements. Galvan urges that the language of 31 U.S.C. § 3730(b)(5), saying that "no person other than the Government may intervene," implies that the term "person" includes the government and thus resolves any ambiguity. He also argues that the exemption of certain officials from liability under § 3730(e)(2)(A) implies that all other government entities are suable, and that therefore government corporations fall within the definition of person in 1 U.S.C. § 1. The government points to § 3730(d)(2), which makes the "defendant" liable for a prevailing relator's expenses, and § 3730(f), which states that the government cannot be found liable for the relator's expenses; taken together, these provisions arguably imply that "the government" cannot be the defendant.

There are answers to each of these arguments. That § 3730(b)(5) uses the term "person" in excluding all possible intervenors other than "the Government" sheds little light on the congressional view of proper defendants. Section 3730(e)(2)(A)'s explicit but limited immunity for *individuals* holding specified offices is completely consistent with an assumed immunity for government entities themselves; recovery from fraudulent individuals would not involve two branches of the federal government running up litigation costs so that one can collect from another. And the statutory combination cited by the govern-

ment, creating "defendant" liability for attorneys' fees while protecting "the Government" from such liability, can be explained by limiting the government's exemption to appearances in its capacity as intervenor. In the end, none of these contextual arguments seems to offer any strong ground for interpretation of "person" one way or the other.

We note that the circuits have split over whether "person" under the False Claims Act includes states. Compare *United States ex rel. Long v. SCS Business & Tech. Inst.*, 173 F.3d 870 (D.C.Cir.1999) (finding that it does not), with *United States ex rel. Stevens v. Vermont Agency of Natural Resources*, 162 F.3d 195 (2d Cir.1998), *cert. granted,* —— U.S. ——, 119 S.Ct. 2391, 144 L.Ed.2d 792 (1999) (finding that it does), and *United States ex rel. Zissler v. Regents of the Univ. of Minn.*, 154 F.3d 870 (8th Cir.1998) (same).[6] The courts have necessarily resolved this question under the presumption established in the *Will* and *Wilson* cases; that two circuits found the presumption overcome in that context is a source of caution. But for state liability there was a stronger basis in the overall purpose and legislative history for inclusion, see, e.g., *Long*, 173 F.3d at 875–81, and the analysis was not subject to any interpretive guidance as strong as *Nordic Village*'s instruction that the presence of a "plausible" non-waiver interpretation compels rejection of a waiver interpretation. Because the reading of "person" to exclude agencies of the federal government is at least plausible, we find no waiver.

At oral argument, Galvan's counsel attempted to raise an additional theory under which Galvan could recover pursuant to the False Claims Act. He argued that the Tucker Act, 28 U.S.C. § 1491— and the Little Tucker Act, *id.* § 1346(a)(2), to the extent that the claim did not exceed $10,000—waived sovereign immunity:

§ 1491(a)(1) waives for a claim "founded ... upon ... any Act of Congress," and the Supreme Court has understood that to encompass any statute that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The False Claims Act, says Galvan, is such an act. As the False Claims Act does not specifically impose any obligation on a branch of the United States, Galvan's argument seems quite a stretch of the *Mitchell* principle. But we shall not explore Galvan's argument because it was not raised before the district court or in Galvan's submissions to this court. We do not normally "consider all the implications of a theory vaguely raised for the first time at oral argument on appeal." *Tarpley v. Greene*, 684 F.2d 1, 7 n. 17 (D.C.Cir.1982).

Galvan's claim must be dismissed because the FPI enjoyed an unwaived sovereignty immunity; the judgment of the district court is

*Affirmed.*

---

6. Since granting *certiorari* in *Stevens,* the Supreme Court has added the broader question of whether a private person can have standing to bring a *qui tam* action in the absence of particularized injury attributable to the defendant's actions. See *Stevens*, —— U.S. ——, 119 S.Ct. 2391, 144 L.Ed.2d 792 (1999) (adding standing question).