NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0897n.06
Filed: November 15, 2005

Nos. 04-5521, 04-6035, 04-5937

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **Danny Parrett,** | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Southeastern Boll Weevil Eradication Foundation, Inc.,** | ) | |
| | ) | |
| *Defendant-Appellant*; | ) | |
| | ) | |
| **Danny Parrett,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| **v.** | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **United States of America** | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee.* | ) | |

BEFORE:    COLE, ROGERS, and MCKEAGUE, Circuit Judges

    R. GUY COLE, JR., Circuit Judge.  In a wrongful termination action, Defendant-Appellant,

Southeastern Boll Weevil Eradication Foundation, Inc. ("Southeastern"), appeals the district court's

order denying Southeastern's motion to dismiss on sovereign immunity grounds.  In a related

Federal Tort Claims Act ("FTCA") claim arising from the same facts, Plaintiff-Appellant Danny

Parrett, the Appellee in the action against Southeastern, appeals the district court's grant of the

United States's motion to dismiss Parrett's claim against it, brought under 28 U.S.C. § 1346(b), for lack of subject matter jurisdiction. For the reasons that follow, we **AFFIRM** the judgment of the district court in both cases.

## I. BACKGROUND

The boll weevil is a beetle that lives in and around cotton plants and causes them great damage. Due to the impact of the boll weevil on the cotton industry, eradication of the beetle is a goal of the federal government. In 1973, Congress passed legislation authorizing "programs to destroy and eliminate cotton boll weevils in infested areas of the United States . . . ." 7 U.S.C. § 1444a(d). This legislation provided that the Secretary of Agriculture should carry out the project using the services of federal, state, and private agencies, as well as cotton organizations. *Id.*

Southeastern Boll Weevil Eradication Foundation, Inc., was incorporated as an Alabama non-profit corporation in 1988. Southeastern's Articles of Incorporation state that the purpose of the foundation is to "carry out programs of boll weevil eradication and suppression . . . . promote, facilitate, and assist in the implementation of boll weevil eradication and suppression programs sponsored or recommended by the U.S.D.A. . . . ." and carry out "any other purpose that may be lawful under the Alabama Non-Profit Corporation Act."

The United States Department of Agriculture ("USDA") and the Animal and Plant Health Inspection Service ("APHIS"), a sub-agency of the USDA, oversee the boll weevil eradication program authorized by 7 U.S.C. § 1444a(d). The USDA and APHIS work with Southeastern to carry out eradication programs. The relationship between the organizations is governed by a series of cooperative agreements, which the parties enter into on an annual basis.

On October 22, 2002, Danny Parrett, a former employee of Southeastern, commenced this action against Southeastern based on his allegations that they terminated his employment due to his refusal to participate in illegal activities involving the pesticide malathion. He asserted claims under whistleblower provisions of the Tennessee Code, Tennessee common law, and 42 U.S.C. § 1983. On December 23, 2002, Southeastern filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming that it was entitled to sovereign immunity. By order of March 10, 2004, the district court denied Southeastern's motion, holding that it was not an arm of the federal government and was therefore not entitled to sovereign immunity.

Southeastern filed a Notice of Appeal pursuant to 28 U.S.C. § 1291, which was docketed as No. 04-5521. The district court subsequently amended its order to include a certificate of appealability, and Southeastern then filed with this Court a petition for permission to appeal pursuant to 28 U.S.C. § 1292(b). Southeastern's second appeal was assigned docket No. 04-5937. By an order filed August 17, 2004, this Court consolidated Southeastern's two appeals, declined to rule on whether Southeastern was entitled to a § 1291 appeal, and granted its request for an interlocutory appeal pursuant to § 1292(b).

As a precautionary measure, Parrett began to pursue a claim against the federal government under the FTCA while Southeastern's motion to dismiss on sovereign immunity grounds was pending. He submitted a letter to the USDA in April 2003, and received a letter in response on December 23, 2003, informing him that his claim had been denied and advising him of his right to file suit in district court. Parrett did so on June 21, 2004, and the United States moved to dismiss for lack of subject matter jurisdiction. On September 1, 2004, the district court entered an order

granting the United States's motion, finding that Southeastern was not a federal agency and therefore not liable under the FTCA.

Parrett filed a Notice of Appeal pursuant to 28 U.S.C. § 1291, docketed as 04-6035. On October 5, 2005, in response to a motion for consolidation filed by the United States, this Court ordered Parrett's appeal to be consolidated with Southeastern's appeals.

The issue of Southeastern's status is also presented in the matter of *Perry v. Southeastern Boll Weevil Eradication Foundation, Inc., et al.,* Nos. 04-5537, 04-5540, and 04-5573, which was argued before this panel on the same day as the present matter and which we address in a separate opinion.

## II.  ANALYSIS

### A.  *Parrett v. Southeastern Boll Weevil Eradication Foundation, Inc*.

We review *de novo* the question of whether Southeastern is entitled to federal sovereign immunity. *United States v. Kentucky*, 252 F.3d 816, 825 (6th Cir. 2001). This Circuit has held that an assertion of state sovereign immunity, like any other defense, must be proved by the party that asserts it and would benefit from its acceptance. *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002). We find no reason to apply a different rule to assertions of federal sovereign immunity, and therefore we determine that Southeastern bears the burden of showing it is entitled to sovereign immunity.

As a preliminary matter, Parrett argues that Southeastern has waived its claim regarding sovereign immunity by not filing for certification of federal agency or federal employee status under the FTCA. The FTCA authorizes suits against the United States for torts committed by government

employees acting within the scope of their federal employment. 28 U.S.C. § 1346(b). In order to substitute the United States as the defendant in a FTCA case, the employee-defendant must submit a petition to the United States Attorney General requesting certification that the employee is a federal employee and that the incident in question arose within the scope of his federal employment. 28 U.S.C. §§ 2679(c), (d)(1). Parrett argues that Southeastern failed to follow this requirement and therefore waived its argument in this Court that it is entitled to sovereign immunity. This statutory requirement, however, is for claims brought under the FTCA. Parrett's claim against Southeastern in this case was brought under a state whistleblower statute, state common law, and 42 U.S.C. § 1983. Because these claims were not brought under the FTCA, the FTCA's certification requirement does not apply and Parrett's argument that the parties waived their sovereign immunity claim is unavailing.

We therefore proceed to the question of whether Southeastern is protected by federal sovereign immunity. Absent a waiver, sovereign immunity shields the United States government and its agencies from suit. *United States v. Lee*, 106 U.S. 196, 205 (1882); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The circumstances under which a private organization is entitled to federal sovereign immunity are less clear. This Circuit has not articulated a test for determining whether an organization or corporation enjoys federal sovereign immunity. The Supreme Court has not addressed the question in over sixty years, *see Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U.S. 381, 388-89 (1939); *Reconstruction Fin. Corp. v. J.G. Menihan Corp.*, 312 U.S. 81 (1941) (reaffirming *Keifer*), and the D.C. Circuit has recently called into doubt the continued authority of

that precedent, *Galvan v. Fed. Prison Indus., Inc.*, 199 F.3d 461, 467 (D.C. Cir. 1999) (questioning *Keifer* in light of *Meyer*, 510 U.S. at 475).

In the absence of a clear Sixth Circuit test for federal sovereign immunity, the court below applied this Circuit's test for state sovereign immunity. This test evaluates (1) whether the state would be responsible for judgments against the organization, (2) how state law defines the organization, (3) the state's degree of control over the organization and its board of directors, (4) the organization's source of funding, and (5) whether the organization's functions are of a traditional state government nature. *Ernst v. Rising*, ___ F.3d ___, 2005 WL 2757534 (6th Cir. Oct. 26, 2005) (en banc); *see also Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994); *Brotherton v. Cleveland*, 173 F.3d 552, 560 (6th Cir. 1999). The most important factor in this analysis is whether the government would be responsible for paying a judgment made against the organization. *See Ernst*, 2005 WL 2757534, at *5; *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003); *Hess*, 513 U.S. at 51. The D.C. Circuit has considered this factor in analyzing federal sovereign immunity as well. *See Wood ex rel. U.S. v. Am. Inst. in Taiwan*, 286 F.3d 526, 533 (D.C. Cir. 2002) (considering fact that judgment against entity would affect Treasury); *Galvan*, 199 F.3d at 463 (considering fact that all money under entity's control was held by U.S. Treasury and thus any judgment "would require [entity] to pay damages directly from the public treasury.").

Southeastern takes issue with the district court's use of a state sovereign immunity test in the federal context, and urges another paradigm of analysis, taken not from sovereign immunity case law but rather from cases addressing whether a corporation is an arm of the federal government for purposes of constitutional claims. The leading case in this area of law is *Lebron v. National*

*Railroad Passenger Corp.*, 513 U.S. 374 (1995), where the Supreme Court analyzed whether Amtrak could be sued for a First Amendment violation. *Lebron* identifies three major questions necessary to determine whether a private corporation is an arm of the federal government for purposes of federal constitutional challenges: (1) Creation: Did the government create the corporation by a special law? (2) Objectives: Was the corporation created for the furtherance of governmental objectives? (3) Control: Did the government retain for itself permanent authority to appoint a majority of the directors of the corporation? *Lebron*, 513 U.S. at 400. The D.C. Circuit has looked to *Lebron* in performing its sovereign immunity analysis, emphasizing the government nature of an organization's responsibilities and the degree of control the government exerts over the organization. *See Wood*, 286 F.3d at 531. However, *Lebron* itself suggests that the inquiry over sovereign immunity differs from the inquiry over whether an organization may be subject to constitutional claims: Although holding that Amtrak was subject to First Amendment claims, the Court noted in *dicta* that Amtrak would not be entitled to sovereign immunity because the statute creating the organization specifically states that Amtrak is not an agency of the federal government. *Lebron*, 513 U.S. at 392, 400.

Southeastern also urges us to look at the test for federal agency status applied in the FTCA case *United States v. Orleans*, 425 U.S. 807 (1976), which likewise emphasizes government control. However, the statutory meaning of the term "agency" as used in the FTCA is not dispositive of the question of federal sovereign immunity.

These tests overlap significantly. Because the same result obtains when any of these tests is applied to Southeastern, we conclude that the district court did not err in concluding Southeastern

is not entitled to sovereign immunity. Given that Southeastern is clearly not entitled to sovereign immunity, as discussed below, we find it unnecessary to settle the question of what test for sovereign immunity should apply in this Circuit.

First, there is no indication that the federal government would be responsible for paying a judgment against Southeastern. The corporation is organized as a non-profit corporation under Alabama law and its Articles of Incorporation do not indicate that the federal treasury would be responsible for paying adverse judgments against the corporation. Notably, upon receipt of Parrett's complaint in this action, Southeastern did not seek legal representation from the government; Southeastern has been represented by private counsel since the start of this suit.

The federal government provides funding to Southeastern through yearly grants, as outlined in the annual cooperative agreements. Southeastern argues that if its expenditures exceeded receipts for a given year, it might have to look to the federal government, as well as its other funding sources, for additional funding. This is insufficient to show that the federal government would be responsible for paying an adverse judgment against Southeastern. In this Court's recent decision in *Ernst*, we found that a statute requiring the legislature to appropriate the amount of money needed "to reconcile the estimated appropriation made in the previous fiscal year with the actual appropriation needed to adequately fund the retirement system for the previous fiscal year" did show that the government would be responsible for paying an adverse judgment against the entity in question in that case. *Ernst*, 2005 WL 2757534, at \*5. The statute in that case directly tied funding to the expenditures made by the organization in the previous year. Thus, an adverse judgment against the organization would necessarily require additional funding from the state government to "reconcile"

the appropriation with the appropriation needed to fund the retirement system. *Id.* Here, in contrast, the government is not obligated to appropriate funds based on the previous fiscal year. In fact, the government is not bound to allocate any funds at all: The 2001 Cooperative Agreement specifically states that funding is "contingent upon the passage by Congress of an appropriation from which expenditures may be legally met and shall not obligate APHIS upon failure of Congress to so appropriate . . . ." and also provides for termination of the Agreement in the event that "Congress only provides APHIS funds for a finite period under a Continuing Resolution." Hence, neither Congress nor APHIS would be obligated to provide funds to pay an adverse judgment against Southeastern or to allocate funds to make up for losses caused by an adverse judgment. Accordingly, this factor weighs against a finding of federal sovereign immunity.

Second, it does not appear that the corporation was created or defined by a special law that would indicate its status as an arm of the government. *Cf. Lebron*, 513 U.S. at 384-85. Southeastern points to 7 U.S.C. § 1444a. This law authorizes the Secretary to "carry out programs to destroy and eliminate cotton boll weevils . . . ." and then directs the Secretary to carry out these projects utilizing the services of federal, state, and private agencies, as well as other cotton organizations. The statute does not authorize creation of an agency or corporation, and does not define Southeastern in any manner. The agreements between Southeastern and the government describe the relationship as a "cooperative effort." Southeastern's members are described as being state representatives elected by cotton producers or appointed by the Commissioner of Agriculture in a particular state. These descriptive terms do not refer to Southeastern as a federal agency or a federal corporation or an arm

of the federal government in any manner. Accordingly, they provide little support for Southeastern's claim that it is entitled to federal sovereign immunity.

Third, the federal government exercises little control over the leadership or day-to-day functions of Southeastern. The federal government does not maintain "permanent authority to appoint a majority of the directors" of the corporation. *Lebron*, 513 U.S. at 400. Southeastern's Articles of Incorporation state that the directors "shall be determined by allocating three (3) directors to each state foundation that has been accepted as a member of this corporation," and do not indicate or authorize any federal control over this process. The federal government likewise has no authority or control over the selection of Southeastern's officials, who are selected by cotton producers or state officials. *Cf. id.* Although APHIS has some supervisory control over Southeastern, this control is advisory in nature and does not constitute control over the "detailed physical performance" of Southeastern. *Cf. Orleans*, 425 U.S. at 814. The cooperative agreements indicate that Southeastern employees are under the direction of Southeastern whereas APHIS employees are under the direction of APHIS. Although APHIS reviews Southeastern's financing, Southeastern retains control of its own budget decisions. Southeastern's year 2002 workplan outlines the foundation's responsibilities, which include: (1) providing an executive director who is "responsible for conducting the Foundation's business and will be the authorized representative for coordinating its activities with those of APHIS," and (2) employing personnel to "provide day-to-day supervision and control of eradication activities." The agreement then details the many tasks included in the supervision and control of eradication activities. APHIS, in contrast, agrees to (1) identify a director to "conduct APHIS business and coordinate with the Foundation's Executive Director," and (2)

provide personnel to *advise* operations and provide technical support as necessary. The plan clearly requires Southeastern to control day-to-day activities with the federal government providing merely advisory and technical support.

Fourth, the federal government's partial funding of Southeastern does not transform Southeastern into a sovereign federal government agency. According to the district court, the federal government provides approximately 30% of Southeastern's funding. The states and cotton producers provide the other 70% of the necessary funding. This level of federal funding, though not insignificant, does not establish that Southeastern is an arm of the federal government. As stated by the *Orleans* Court in the FTCA context, government funding alone does not transform a private entity into a federal government entity. *Orleans*, 425 U.S. at 816-17. To hold otherwise would protect numerous private organizations from suit due to their government funding.

Finally, we look to the nature of Southeastern's goals. Under the *Lebron* test, we ask whether the corporation was created to further government objectives. 513 U.S. at 400. Under this Court's traditional state sovereignty test, we ask whether the entity's functions are traditional government functions. *Ernst*, 2005 WL 2757534, at *6. Since Southeastern's goals of boll weevil eradication and suppression clearly coincide with the goals of 7 U.S.C. § 1444a, we find that Southeastern was created to further federal government objectives; and the suppression of agricultural pests aims at improving profitability in the farming industry, which arguably is a traditional federal government function. However, not every entity whose goals coincide with the government's goals is entitled to sovereign immunity. Here, this factor cannot outweigh the other factors that militate against finding sovereign immunity.

We note that two district courts have previously held in unpublished opinions that Southeastern enjoys sovereign immunity. *See Morgan v. Hardeman County*, No. 01-1043, 2002 WL 1397256, at *1 (W.D. Tenn. Feb. 12, 2002); *Hovey v. Se. Boll Weevil Eradication Found., Inc.*, No. 91-A-911-S (M.D. Ala. May 4, 1992). We do not find either of these cases persuasive.

*Hovey* was decided in 1992 when the control and relationship between the government and Southeastern was different. The year 2000 cooperative agreement states that "[t]hrough FY 1996 APHIS provided technical and supervisory personnel and co-managed the overall program. Beginning in FY 1997 APHIS provided and will continue to provide advisory personnel only." Because the degree of government control over day-to-day operations was the key factor in *Hovey*, it is inapplicable to this case since government day-to-day control over operations has since ceased.

In *Morgan*, the court focused on cooperative agreement language indicating that Southeastern "shall work with USDA/APHIS/PPQ in the day-to-day management of the Program." *Morgan*, 2002 WL 1397256, at *9. Such language does not create government control over day-to-day management; rather, it indicates cooperation between the two organizations. Because the key factor is control, not cooperation, this language is inconclusive and does not transform Southeastern into a federal agency.

## B. *Parrett v. United States*

Parrett's sole argument for reversing the district court's dismissal of his FTCA suit is phrased conditionally: If Southeastern is a federal agency for purposes of sovereign immunity, Parrett argues, then Southeastern is also a federal agency for purposes of the FTCA. Parrett's argument

fails on its own terms, because we find that Southeastern is not a federal agency for purposes of sovereign immunity. *See supra* Part A.

Parrett has made clear both in his written briefs and at oral argument that his FTCA suit against the United States is only a precautionary measure in the event that this Court finds Southeastern to be immune from suit. In fact, Parrett instructs us in his brief that if we affirm the district court's denial of Southeastern's motion to dismiss – which we do – then we should also affirm the district court's grant of the United States's motion to dismiss his FTCA claim.

Since Parrett has effectively waived his argument that the federal government is liable for Southeastern's actions under the FTCA, we do not address it, and we affirm the decision of the district court dismissing Parrett's claim.

### III.  CONCLUSION

For the preceding reasons, we **AFFIRM** the judgments of the district court in both *Parrett v. Southeastern Boll Weevil Eradication Foundation, Inc.* and *Parrett v. United States.*

Rogers, J., concurring.

I concur in the result only. In my view the arguments of Southeastern are wholly without merit.

The Southeastern Boll Weevil Eradication Foundation (Southeastern) cannot claim federal sovereign immunity for the simple reason that it is a state-incorporated nonprofit organization that cannot plausibly be thought to be part of the federal sovereign or under its umbrella of immunity by virtue of a congressional act. *See Keifer v. Keifer Reconstruction Fin. Corp.*, 306 U.S. 381 (1939); *FDIC v. Meyer*, 510 U.S. 471 (1994). Although the D.C. Circuit sees tension between *Keifer* and *Meyer* where federal government corporations are concerned, in this case that issue is academic because Southeastern is not a federal government corporation. *See Galvan v. Fed. Prison Indus., Inc.*, 199 F.3d 461, 466-67 (D.C. Cir. 1999). Southeastern is not part of the federal sovereign and cannot partake of its immunity from suit.

As for the Plaintiff's FTCA claim, he filed it as a precaution against the possibility that Southeastern might receive federal sovereign immunity. That contingency has been avoided, and the FTCA claim in any event is clearly meritless because the federal government does not supervise the day-to-day operations of Southeastern. *See United States v. Orleans*, 425 U.S. 807, 815 (1976). The FTCA claim was therefore rightly dismissed as well.